**BABSON BROS. CO., an Illinois Corporation, Plaintiff,**

v.

**CHORE–BOY MANUFACTURING CO., Inc., an Indiana Corporation, Defendant.**

No. IP 57–C–286.

United States District Court
S. D. Indiana,
Indianapolis Division.

Aug. 30, 1960.

Schley, Trask & Jenkins, Indianapolis, Ind., and Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., for plaintiff.

Herbert A. Minturn, Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

Findings of Fact

1. Plaintiff Babson Bros. Co. is a corporation organized and existing under the laws of the State of Illinois, and has its principal place of business at Chicago, Illinois. Defendant Chore-Boy Manufacturing Co., Inc. is an Indiana corporation and has its principal place of business at Cambridge City, Indiana.

2. This is an action for damages and an injunction against defendant for alleged infringement of U. S. Patent No. 2,793,612, issued May 28, 1957, of which plaintiff is the owner, on an application of Henry B. Babson, filed February 17, 1955.

3. Claims 2 and 3 have been placed in suit. The preambles of these claims set out an environment of a milking apparatus and an evacuated milk carry-away pipeline. These two elements—milking apparatus and evacuated pipeline are admittedly old in the prior art. The patentable invention is alleged to exist in a milk receiver combination with an upper inlet and an outlet and a supporting means permitting tipping of the

receiver. Claims 2 and 3 differ primarily in that Claim 2 specifies "pivotal mounting means supporting said chamber means for rotational movement" and "the outlet being above the normal level of milk in said chamber" when the chamber is receiving milk from the milking apparatus, while Claim 3 defines the mounting means as "means supporting said chamber means for movement between a first position in which milk from said animal collects in the chamber."; "both the inlet and outlet being on the top thereof when in said first position"; "and a second position in which the milk empties from the chamber through said outlet, the outlet being substantially at the bottom thereof when in said second position." It is self-evident that the milk chamber would have to operate in that manner for tipping the chamber to empty it.

4. The Claims 2 and 3 disclose nothing more than the milk pail of the McCornack Patent No. 1,859,213, issued in 1932, Figs. 1 and 4, as an intermediate milk chamber 6, referred to by plaintiff as a conventional bucket, with the bail 7 rockably supporting the bucket 6 for rotary movement, and pail milk inlets 12, Fig. 5 operably connected with the cow through the tubes 19 receiving milk through the lid 11 on the pail. Babson changed the outlet from over the rim of the bucket 6 upon lifting the lid, to a tubular outlet fixed to the lid. That is the only modification to be added to an otherwise complete anticipation by the McCornack patent disclosure. This inlet and separate outlet through the top of a liquid receiving chamber is found to be quite old in Defendant's Exhibits E, I and J and the Beehler patent 470,776, Exhibit L. None of the elements of Babson's Claims 2 and 3 perform any additional or different function in the combination than they perform out of it.

5. The Babson patent states that "it is a principal object of the present invention to provide an intermediate milk receiving chamber for a carry-away milking system which may be used to collect and measure the output of individual cows and which utilizes no complicated mechanical valves." No valve is included in Claims 2 and 3, but the patent discloses a valve 18 in the hose line between the chamber outlet and the carry-away pipeline.

6. Milk measuring chambers have been shown in the prior art to be "intermediate milk receivers" with valves between the receivers and the carry-away pipeline.

7. Plaintiff's witness Mollman testified at length on the need for sanitation in milk pipeline systems emphasizing the desirability of eliminating valves in the milk stream. Defendant agrees that sanitation is highly desirable.

8. Defendant's witness Reisner testified without contradiction that prior to 1913, he milked cows at the University of Illinois, where he milked into a pail having a supporting bail, took the pail of milk to a scale to weigh the milk, then carried the pail of milk to a carry-away milk pipeline, lifted the pail by its bail, tilted the pail on the bail and poured the milk into the pipeline down which the milk flowed to a milk room. The pail had a common inlet and outlet opening at the top, and the pipeline was not evacuated to a low pressure other than that induced by the flow of milk by gravitation.

9. Defendant's Exhibit E, a chemist's wash bottle at least as old as 1917, has separate inlet and outlet openings, both openings being uppermost in filling, and the outlet opening at a lowermost position when the bottle is tilted to empty it, tilting being done by hand.

10. Defendant's gasoline can, Exhibit J, admittedly as old as in 1942, is a 2½ gallon measure, supported by a bail and has an inlet separate from the hose outlet. This can obviously may be directly substituted without change for the patent intermediate receiver to have the can inlet "operably" connected to the milking apparatus, and the can outlet "operably" connected to the evacuated milk carry-away milk pipeline, with the can bail en-

gaged over a weighing scale, without use of a valve. Defendant's Exhibit H illustrates an acid carboy admittedly disclosed as early as 1952—wherein acid is flowed into an upright bottle or flask rotatably supported, flowed out by tipping the bottle. Acid is commonly used by dairies in testing milk for butterfat.

11. The patent to Beehler, Exhibit L, issued March 15, 1892, shows a can similar to that of Defendant's Exhibit J, having a bail to permit rotational movement of the can from a filling to an emptying position, and as having an inlet and an outlet, both above the normal level of the liquid in the can before tilting the can. There is a hose operably connected to the outlet.

12. Defendant, as early as 1946, employed a drum Exhibit B rotatably mounted to be filled through an upper opening in a first position and to be emptied through that opening when the drum was rotated one hundred eighty degrees.

13. The prior art patents Nos. 1,846,-855; 1,910,830; 2,037,467; and others show it has been old prior to Babson's filing date to use hoses to operably interconnect devices for desired flows of milk.

14. The Groff patent 967,513 of 1910, shows a rotationally mounted bucket serving as an intermediate milk receiver between a cow and a milk carry-away vessel.

15. The Daysh patent 1,548,437 of 1925, shows an automatic milk measuring device wherein milk comes from a cow in a flow induced by vacuum and pours into an intermediate milk receiving bucket. When the bucket fills to a predetermined level, the bucket tips over and empties into an evacuated chamber as the equivalent of a milk carry-away pipeline.

16. The British patent 650,897 of 1951, Exhibit L, entitled "Improvements in Milk Tipping and Weighing Apparatus," states that the structure is not limited to handling milk, but "may be used also for liquids other than milk." Plaintiff's witness Hood explained the disclosure of this patent as having, as in the Babson patent, a chamber receiving milk; the chamber being rockably suspended from a scale for weighing with the chamber inlet uppermost when filling and lowermost when emptying; and the patentee states he eliminates the use of a valve as theretofore used. The inlet and outlet are in common, without a valve.

17. The Babson patent structure of Claims 2 and 3 and Defendant's Exhibits B, D, E, H, J, and the Beehler patent 470,776 Exhibit L, are in analogous art—the art of handling, measuring and transporting of liquids, wherein the devices of the art function in common. The Patent Office file wrapper shows none of the structures of these exhibits were cited or discussed by the Patent Office Examiner. The structures of these exhibits are more pertinent than those of the patents cited by the Examiner. The Babson Patent Office file wrapper does not show that the patents to Beehler, 470,776; Groff, 967,513; Daysh, 1,546,-547; and the British patent to Bloomfield, et al., 650,897 of 1949, all of Exhibit L were considered and applied to the Babson application by the Examiner during prosecution of the application. Both the physical and the patent exhibits relied upon by defendant are more pertinent than the three patents urged by the Examiner, namely, Fuge, 1,534,939, applied only as a milk sampler; Graves, 1,977,511, non-tiltable milk receiver with no top outlet; and the British patent, 583,745, a hot water bottle to show a bail with stops. Any presumption that the Patent Office had before it the most pertinent prior art is vitiated.

18. Plaintiff did not testify as to any commercial sales and success being had of the structure of Claims 2 and 3, as might have been an aid in determining the question of validity.

19. The purpose, the shape, the structure, and the mode of operation of the alleged "novel" pail of the Babson Claims 2 and 3, are for all practical purposes the same as those of the prior art. Any advance or contribution over the prior art made by Babson by using an outlet in ad--

dition to an inlet, such for example as in relation to the milk pail in the McCornack patent No. 1,859,213, would not give any new, unexpected or surprising function or new result. The structure of the Babson's patent has not been shown to have accomplished the principal object of the structure, namely the elimination of a valve in the milk discharge line, the valve still remaining in exactly the same place as in the Hapgood patent No. 2,-037,467, designated as the valve e'. It would seem that Babson retrogressed in his conception and production of the device of the patent in suit by going back to prior art hand operated devices rather than providing an automatically unloading milk measuring device as shown in the Groff, Daysh, and Bloomfield, et al. patents, Exhibit L. Babson's pail still has to be dismantled for cleaning as do the prior art structures.

20. All that can be made out of the combination of the patent Claims 2 and 3 is that, in a simple form which would be included in those claims, the claims include a milk pail having an inlet and an outlet at the uppermost part of the pail, and a bail on which the pail is rockably supported—that is all there is to the mechanical construction. The rest of the verbiage of the claims, other than the preamble which is not a part of the combination, is descriptive of the operation of the pail, that is, receives milk in the upright position through the inlet, and empties milk in the tipped over position through the outlet. That, in view of the prior art, it did not involve the exercise of patentable invention, and but at most little mechanical skill, and did not rise to the dignity of invention, even if the prior art does not constitute an anticipation. Anticipation has been made out.

21. Defendant's device alleged to infringe the Babson patent Claims 2 and 3 consists of a standard glass flask made previously to defendant's use by Corning Glass Company, for sale to and used by chemical laboratories. The flask is an enlargement of the chemist's wash bottle, defendant's Exhibit E. Defendant's flask is mounted to rotate between upright and tipped over positions to receive milk in the first position and pour it out in the second position. Defendant has followed the teaching of the prior art. Defendant's device would infringe Babson's Claims 2 and 3 if they are valid.

### Conclusions of Law

From the foregoing facts the court concludes:

1. The court has jurisdiction of the parties hereto and of the subject matter of the action.

2. Claims 2 and 3 and each of them, of the Babson patent No. 2,793,612, are invalid.

3. The complaint is dismissed and costs are awarded defendant.